IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

AARON LOCKLEAR

    PLAINTIFF                  CIVIL ACTION No.: JFM-02-4087

v.

BERGMAN & BEVING, AB, et. al.

    DEFENDANTS

_____,

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

### Introduction

    This memorandum of law was prepared to oppose the Defendants' Memorandum of Law in support of Defendant's Motion to Dismiss for lack of personal jurisdiction.

    The Plaintiff Aaron Locklear was seriously injured and disfigured when he was injured in an industrial accident on December 20, 1999 while operating a metal fabrication machine during the course of his employment.  Mr. Locklear's right hand Plaintiff was caught in the workings of a metal fabricating machine resulting in the degloving and destruction of his right hand. The term "degloving" is used by trauma surgeons to indicate an injury by which the flesh including muscles, skin and other soft tissues are completely torn off of a hand. This results in a traumatic amputation or partial amputation of a hand.  Plaintiff filed a claim for worker's compensation benefits in Maryland shortly thereafter.  Mr. Locklear endured numerous surgeries and years of painful rehabilitation.

    After obtaining permission from the Worker's Compensation carrier to file suit, Plaintiff Locklear brought this action against the Defendants.  The Defendants admit that one of its

subsidiaries has contacts with the State of Maryland, namely Luna Verktyg & Maskin AB.[1] This is very significant because under the analysis of relevant Supreme Court decisions as well as other case law, Plaintiff Locklear will demonstrate in this Memorandum that based solely on this representation, minimum contacts exist that under the due process analysis of fairness, require a finding that personal jurisdiction exists in this case. The Defendants argue that the actions of this subsidiary should not establish minimum contacts as far as the parent holding companies are concerned.

The Defendants have been forthright in providing this information to the Court by way of their Memorandum, however, their argument that the parent holding companies Bergman & Beving AB and Luna AB should not be found to have minimum contacts with the State of Maryland seems to be without foundation.

<u>Argument</u>

I. <u>Defendants Have Provided Information to this Court and Plaintiff through its Memorandum, that Luna Verktyg & Maskin AB (one its subsidiaries) Conducts Business in Maryland</u>

The Defendants have disclosed to this Court and to the Plaintiff in their Memorandum in Support of the Motion to Dismiss, that one of its subsidiaries has a distributorship through a dealer named Comeq, Inc. in the State of Maryland. This distribution relationship is sufficient for a finding of minimum contacts. <u>Anderson v. Dassault Aviation</u>, *see also*, <u>Weight v. Kawasaki Motors Corp.</u>, 604 F. Supp. 968 (1985). It is significant because the Courts have consistently held that where a foreign corporation has minimum contacts consistent with the dictates of due

---

[1] On page 6 of Defendants' Memorandum in Support of its Motion to Dismiss for Lack of Personal Jurisdiction, Defendants identify a subsidiary that has contacts with the State of Maryland.

process, the parent corporation of a subsidiary cannot escape in personum jurisdiction by claiming it had no contacts or insufficient contacts with the forum state. Id. The Plaintiff in Anderson brought a personal injury law suit against the French manufacturer of an aircraft which had no contacts with the state of Arkansas other than a distribution agreement held by its subsidiary with a company located in the state. The Eighth Circuit found that neither physical presence in the state nor piercing of the corporate veil was needed in situations where a parent company exists, and some of the following factors are present: 1. The parent corporation and the subsidiary share a common name or part of the same name, 2. The parent and the subsidiary share a web site, 3. The parent corporation would not be too burdened by having to defend an action in the state, 4. The state has in interest in the safety of individuals in the state in connection with the product manufactured in the other country. Id. at 453-455.

In Weight, the Plaintiff brought a products liability lawsuit against Kawasaki, a Japanese manufacturer of motorcycles. Kawasaki had no physical presence in the State of Virginia but had a distribution agreement with independent dealers in the state. The Court stated that,

> KHI [Kawasaki] derives substantial economic… benefits from the sales of its vehicles by Kawasaki U.S.A. Kawasaki U.S.A.'s operations produce profits for KHI, both from the dividends paid to it by Kawasaki U.S.A. and from Kawasaki U.S.A.'s purchases of motorcycles from the parent corporation. This court believes that the sale of motorcycles in Virginia bought from KHI constitutes a substantial source of revenue in actual dollar amounts. KHI has not only derived benefit from the Virginia marketplace but also received protection from Virginia law. This is true even though the product was not placed directly in Virginia by KHI, but instead was marketed by one whom KHI could foresee would cause the product to enter Virginia.

The Court in <u>Weight</u> used the Supreme Court's decision in <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980), to find that minimum contacts were established by the distribution system setup by the parent company in order to sell its product indirectly into the state.  In <u>World-Wide Volkswagen Corp.</u>, the Supreme Court found a foreign corporation which does not purposely avail itself to the rights and privileges of the forum state, can not be subjected to personal jurisdiction in that state.  The Supreme Court considered whether a regional distributor, which marketed cars in three eastern states, and a car dealer located and doing business in New York were subject to the Oklahoma court's exercise of personal jurisdiction in a case where a car sold by the defendant dealer was involved in an accident in Oklahoma. The Court found that the regional distributor and the retail dealer, both New York corporations, had no reasonable expectation that they would be subject to Oklahoma's adjudication of an incident involving the car arising in Oklahoma, the defendant was not subject to the jurisdiction of the Oklahoma court. The Court stated that foreseeability alone was insufficient to meet the minimum contacts requirement, but continued,

> [t]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.

The Court in <u>Weight</u> further used dicta from the <u>World-Wide Volkswagen Corp.</u> case to find a distinction where a distribution system is set up in the state at question. The relevant part of the seminal Supreme Court case states that,

> …the sale of a product of a manufacturer or distributor. . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor

to serve, directly or indirectly, the market for its products in other states, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owners or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.

In the case at bar, Defendants have admitted that one of its subsidiaries has setup a distribution system in the State of Maryland.  This subsidiary, Luna Verktyg & Maskin AB, has intentionally and actively engaged in business in the State of Maryland.  This corporate subsidiary of the Defendants has a process by which it delivers machines into the stream of commerce with the expectation and hope that they will be purchased by consumers in Maryland.  Applying the rule from <u>World-Wide Volkswagen Corp</u>. and the analysis of the court in <u>Weight</u> to the facts of the case at bar, the Court in the case at bar should find that Luna Verktyg & Maskin AB have sufficient minimum contacts to establish that personal jurisdiction exists in the State of Maryland.  Applying the holding from <u>Anderson</u>, the Defendants in this case which are parent holding companies clearly satisfy some of the important criteria in order find that personal jurisdiction exists.  One of the parent holding companies shares the name Luna with its subsidiary.  It would not be too great a burden for the parent holding companies in this case to defend themselves in Maryland as the region is serviced by two international airports and the flight time from Sweden is not much longer than traveling from the west coast of the United States and certainly shorter than from two other states, Alaska and Hawaii.

*Kotzker/Shamy, P.L.*
*2724 West Atlantic Boulevard · Pompano Beach · Florida · 33069 · (954) 956-7676*

II. Finding Personal Jurisdiction in Maryland on a Wholly Owned Subsidiary Necessitates a Finding of Personal Jurisdiction on the Parent Corporations

This Court has previously been asked to determine if sufficient minimum contacts have been established by a foreign corporation which is the parent to a wholly owned subsidiary conducting business in Maryland.

In Copiers Typewriters Calculators, Inc. v. Toshiba Corporation, 576 F. Supp. 312, D. Maryland, 1983, the Plaintiff sued the Japanese manufacturer of copiers for breach of contract in the State of Maryland. The Defendant, moved to dismiss for lack of personal jurisdiction because the only contacts with the State of Maryland were by way of its wholly owned subsidiary, TAL, located in the State of New York. The Japanese Defendant Toshiba submitted Affidavits by corporate officers which stated in relevant part the following information: 1. Toshiba did not own or lease property in Maryland, 2. It had no bank accounts in Maryland, 3. Toshiba had no employees in Maryland, and had no offices, warehouses, branches or places in which it regularly conducted business in Maryland. Also contained in the Affidavits provided to the U.S. District Court in Maryland by Toshiba was information that showed that Toshiba does not conduct business from TAL facilities, had no common directors with TAL, and does not maintain joint bank accounts with its subsidiary. The Court in Copiers Typewriters Calculators, Inc. held that the fact that Toshiba chose to conduct business in the United States by way of a wholly owned New York subsidiary, could not insulate the parent corporation (Toshiba) from personal jurisdiction in the State of Maryland. Id. at 320. In the case at bar, Plaintiff Locklear maintains that the parent corporations in this case Bergman & Beving AB and Luna AB can not escape personal jurisdiction because they were creatively setup to have very little day to day connection with their subsidiaries. Here a wholly owned subsidiary (Luna Verktyg & Maskin

AB), has set up a distribution system in Maryland with the intent and purpose of deriving economic benefit out of the State of Maryland.  As in the in <u>Copiers Typewriters Calculators, Inc</u>. case, the Defendants in the case at bar have submitted Affidavits stating the independence and autonomy of the subsidiary from the parent corporations on issues of control, accounting and day to day operations.  <u>See</u> Defendants Affidavits.  Plaintiff argues that applying the analysis from this Court in <u>Copiers Typewriters Calculators, Inc.</u>, should result in a finding that the parent Swedish corporations in this case have subjected themselves to personal jurisdiction in this case.

Toshiba argued that it was a burden to have to defend an action in Maryland.  The Court stated that while it was a burden, *that the Plaintiff's burden of suing Toshiba in Japan exceeded that of Toshiba's in defending the case in Maryland*.  <u>Id.</u> at 320.  The Court found it significant that Toshiba would be represented by the same counsel which represented its subsidiary, the fact that they were setup to do business internationally and that there business relied in part upon international consumption.  <u>Id.</u>  This Court concluded that, … "[f]orcing Toshiba, an international corporation, to defend a suit in Maryland is patently less burdensome than requiring the plaintiff, a local Maryland dealer, to do the converse."  <u>Id.</u>  The Defendants in this case would likely be defended by the same counsel as its subsidiary, which is not yet a party to this case, and are insured by the same or similar Zurich insurance policy.  <u>Defendants Memorandum</u>, *see also*, section III. of this Memorandum.

The Court in  <u>Copiers Typewriters Calculators, Inc.</u> found that Maryland was the most convenient forum for resolving the dispute because many of the witnesses were located in Maryland, the claim arose from the performance of the machines in Maryland and that the availability of the Maryland forum was important for the Plaintiff's  chances for convenient and effective relief.  <u>Id</u>. at 321.  In this case, the Plaintiff Locklear was injured in a work related

accident in Maryland on a machine manufactured by one of the Defendants' subsidiaries and most of the witnesses to this incident are located in Maryland.  The Plaintiff Locklear has the best chances for convenient and effective relief by being able to have Maryland as the forum for potential relief.

In Oakley, Inc. v. Jofa AB, 287 F. Supp. 2d 1111 (2003), a U.S. District Court in California, was confronted with a case with similar facts to the case at bar.  The Defendant in Oakley was a *foreign holding company* located in Canada.  It had several wholly owned subsidiaries that conducted business for it internationally.  The Defendant moved to dismiss the case based upon lack of personal jurisdiction of the parent holding company based upon the independence and separateness with its subsidiaries.  One of the Defendant's arguments in that case was that the parent was merely a holding company for the assets of the subsidiaries.  The Court in Oakley found that personal jurisdiction should be imputed to the parent holding company because the parent holding company was aware of the business operations of the subsidiary and that business was being transacted in the jurisdiction in question by the subsidiary.  The Court found it significant that the parent holding company was not merely a depository for assets but rather held itself out to the world as a leader in the pharmaceuticals industry.  The Defendant in Oakley also argued that it would be a burden to defend itself in California. The Court however, observed that, "progress in communications and transportation has made the defense of a lawsuit in a foreign tribunal less burdensome." Id.; *see also,* Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558 (Fed. Cir. 1994)  at 1569 (citing *World-Wide Volkswagen,* 444 U.S. at 294,100 S. Ct. at 565).  Using the rule gleaned from Oakley in the case at bar, the parent holding companies should be found to have personal jurisdiction in Maryland because they hold themselves out as holding companies for the subsidiaries which

manufacture all sorts of industrial and commercial machines and tools not just merely depositories for assets. <u>See</u> Defendants' Affidavits. It would not be as big of a burden for the Defendants to defend themselves in Maryland as it would for the Plaintiff to bring this action in the courts of Sweden.

III. <u>Defendants Have Disclosed, Pursuant to Local Rule 103.3 of this Court, that Zurich Insurance Co. will be Providing Coverage and Defense for this Case in Maryland</u>

The fact that the liability carrier for the parent holding companies in this case has filed their notification of financial interest, while not dispositive of the Swedish companies knowledge that they could be hailed into courts in the U.S. and specifically Maryland, does provide circumstantial evidence of that fact. Further, it is likely based upon the disclosure by the Defendants in their Memorandum of the existence of its subsidiary doing business in Maryland and by the absence of an additional Rule 103.3 disclosure, that Zurich would be providing coverage and defenses for the subsidiary as well. If that is true, it is likely that both the carrier and the parent holding companies viewed, as a foreseeable consequence of the subsidiary having personal jurisdiction in Maryland, that the parent corporations might one day be subject to the same jurisdictional finding. Insurance carriers do not commonly extend coverage to claims or to jurisdictions that are outside the terms of the liability insurance policy held by their insured.

IV.     Conclusion

The Defendants have revealed in their Memorandum that a subsidiary does have contacts with Maryland and based upon the precedents discussed above, that is sufficient at this stage, for a finding of personal jurisdiction on the parent holding companies. Based upon the reasons stated in this Memorandum, the Defendants' Motion to Dismiss for Lack of Personal Jurisdiction should be denied.

          Respectfully submitted,

          Kotzker/Shamy, P.L.

*John M. Kotzker*
*electronically signed*
John M. Kotzker, Esq.
Federal Bar # 10725
Attorney for Plaintiff/Trial Counsel
2724 West Atlantic Boulevard
Pompano Beach, Fl. 33069
(954) 956-7676
Fax (954) 956-9995

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of August, 2004, a copy of the foregoing was served via U.S. Mail upon:

Douglas W. Biser
Matthew P. Lalumia #10863
Mudd, Harrison & Burch
105 W. Chesapkeake Ave. #300
Towson, Md. 21204
Attorneys for Defendants

*John M. Kotzker*
*electronically signed*
John M. Kotzker, Esq.