IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND

AARON LOCKLEAR                 *

    Plaintiff                        *

v.                                       Civil No. JFM-02-4087

                                  *

BERGMAN & BEVING AB, et al.

                                  *

    Defendants

                                  *    *    *

<u>DEFENDANTS' REPLY MEMORANDUM</u>

Defendants, Bergman & Beving AB, and Luna AB, by undersigned counsel, respectfully submit this Reply Memorandum. Now pending before this Court are the Defendants' preliminary Motions to Dismiss on the grounds that the Court lacks personal jurisdiction over the Defendants and that the claims are barred by limitations. The Plaintiff has submitted his memoranda in opposition to the preliminary defenses. The Defendants now reply. As the Defendants' arguments in reply will be short and to the point, they will address both the jurisdictional issue and the limitations issue in this single memorandum.

**1.**     **The Plaintiff has failed to refute the Defendants' Motion to Dismiss for lack of personal jurisdiction.**

The Plaintiff has studiously avoided the controlling facts and the controlling law presented in the Motion to Dismiss for lack of personal jurisdiction. The named Defendants here, Bergman & Beving AB and Luna AB, are Swedish holding companies with no physical presence in Maryland, no revenue from Maryland, and no business activities in Maryland. Most important, their role is limited to that of stockholding parent

companies. Bergman & Beving AB and Luna AB do not manufacture products. They do not sell products. The Defendants did not manufacture the machine that allegedly injured the Plaintiff. It is for these reasons that the Plaintiff's reliance on "stream-of-commerce" cases such as Copiers Typewriters Calculators, Inc., v. Toshiba Corp., 576 F. Supp. 312 (D. Md. 1983), is misplaced. The analytical discussion of Toshiba focuses on the exercise vel non of personal jurisdiction over alien manufacturers which have deliberately placed their products into the stream of commerce in the United States, thus invoking the authority of the forum state's laws.[1] The first sentence of the Court's analysis in Toshiba is definitive: "Toshiba performed a forum-related act when it manufactured copiers which it knew were destined for sale in the United States." 576 F. Supp. at 319. By contrast, neither of the Defendant companies here engages in manufacturing or sales of goods. Like holding companies everywhere, they exist in their native country, Sweden, for the purposes of tax efficiency and capital formation. Owning shares of stock in Sweden does not subject a person, individual or corporate, to the jurisdiction of the United States District Court of Maryland.

The Plaintiff next maintains in his opposition that the Defendants, Swedish holding companies with no presence in Maryland, are subject to personal jurisdiction solely because an independent subsidiary company has commercial contacts with a distributor here. The Plaintiff is wrong. His memorandum entirely ignores the law of Maryland, applied by the United States Circuit Court of Appeals for the Fourth Circuit,

---

[1] Similarly, the defendants in other cases cited by Plaintiff were a French aircraft manufacturer, Dassault Aviation, and a Japanese motorcycle manufacturer, Kawasaki, which themselves made products and arranged to market them in the United States. These manufacturing and marketing activities were sufficient to subject them to jurisdiction.

2

adopting the so-called "agency" test to decide whether to pierce the veil separating parent corporations from subsidiaries for jurisdictional purposes. See Mylan Laboratories, Inc., v. Azko, N.V., 2 F.3rd 56 (4th Cir. 1993). The Fourth Circuit Court of Appeals expressly rejected the core of the Plaintiff's argument that the presence in Maryland of the subsidiary here, Luna Verktyg & Maskin AB, creates a jurisdictional connection between Maryland and the parent companies, Bergman & Beving AB and Luna AB: "[A] foreign corporation is not construed as doing business within a state merely because of its ownership of all of the shares of stock of another corporation doing business in the state.") Mylan, 2 F.3rd at 63, quoting Vitro Elec. v. Milgray Elec., Inc., 255 Md. 498, 502 (1969). Moreover, under Maryland law, a parent company's mere awareness of the activities of a subsidiary is not sufficient to impute a jurisdictional connection to the parent. For a jurisdictional connection to arise, the subsidiary must be "under the complete domination and control of another legal entity simply for the purpose of doing its act and bidding." Harris v. Arlen Properties, 256 Md. 185, 200 (1969). The affidavits attached to the Defendants' Motion to Dismiss demonstrate clearly that the subsidiary, Luna Verktyg & Maskin AB, operates independently from the parent holding companies. Accordingly, there is no imputation of a jurisdictional nexus. That is the established law of Maryland determining the results of this case.

The cases applying Arkansas, Virginia or California law cited in the Plaintiff's memorandum do not help him. The Dessault Aviation and Kawasaki cases are inapposite stream-of-commerce cases. In Oakley, Inc. v. JOFA AB, 287 F. Supp. 2d 1111, 1114-1115 (C.D. Cal. 2003), the plaintiff satisfied the court with sufficient

affidavit evidence that the foreign defendant was the developer, manufacturer and seller of the patent-infringing product and was merely the alter-ego of its subsidiaries to justify the exercise of personal jurisdiction. The Plaintiff here, Mr. Locklear, has not refuted any of the evidence submitted on affidavit from the Defendants establishing the functional separation of the Swedish parent holding companies and the subsidiary. In the present case, even the Oakley court would concede that the parents are not subject to jurisdiction: "The [defendant] is a separate legal entity from its subsidiaries and as such cannot be held to have contacts with California just because its subsidiaries maintain contacts with California." 287 F. Supp. 2d at 1116. Also important here is the idea of a comity or congruence of law among modern, civilized nations. An American parent corporation would trust and expect a Swedish court to recognize the independent existences of itself and its subsidiaries for jurisdictional purposes. Bergman & Beving AB and Luna AB respectfully ask the same of this Court.

Finally, these Defendants vigorously dispute the Plaintiff's argument that the filing of Local Rule 103.3 conflict-of-interest information is a concession that they are subject to the Court's jurisdiction. That argument is spurious. The disclosures required under Local Rule 103.3 serve to inform the Court of any potential conflict of interest that might require a judge to recuse himself from a particular case. In accordance with the letter and the spirit of the Rule, these Defendants informed the Court that their insurance carrier in Sweden is the European-based carrier, Zurich Insurance Company. To perceive that disclosure as a fact somehow demonstrating a jurisdictional nexus between these Defendants and Maryland is both illogical and a perversion of the Rule's intent.

**2. The Plaintiff has failed to refute the Defendants' Motion to Dismiss on the ground that the claims are barred by limitations.**

The pertinent chronology is plain and simple. The accident occurred on December 20, 1999. The action commenced December 17, 2002. The Amended Complaint naming these Defendants was filed October 9, 2003. The Defendants were not made aware of the accident or of the lawsuit pending against them until they received an e-mail message from Plaintiff's counsel on February 20, 2004, i.e., four years and two months after the accident. The Plaintiff has now frankly acknowledged in his Opposition, at page 13, that he did not even begin to inquire as to the identity of his supposed tort-feasor until just a few weeks before limitations expired in December 2002. Under these circumstances, his claim is time-barred.

Try as he might, the Plaintiff cannot escape his own pleadings. The original Complaint, filed December 17, 2002 identified as defendants Hassleholms Mekanisk AB, and the "John Doe" seller, distributor and importer of the "Hassleholms wire roller machine." The Amended Complaint, filed months later, for the first time named Bergman & Beving AB and Luna AB as Defendants. The Plaintiff's argument, that the recitation of the machine's serial number in the original Complaint was sufficient to identify Bergman & Beving AB and Luna AB and was sufficient to undo the mistaken identification of Hassleholms Mekanisk AB in the original Complaint, is without merit. Contrary to the Plaintiff's argument, the Defendants were obviously not "placed on notice by the filing of the [original] complaint through the identifiable and exclusive

serial number and product identification number."[2]  The mere filing in Baltimore, Maryland, of a lawsuit containing a machine's serial number, but not identifying Bergman & Beving AB and Luna AB as defendants, obviously did not put them, in Sweden, on notice of the original action at the time it was filed.  The Defendants are not clairvoyant.  The Defendants knew nothing at all about this matter until the Plaintiff's lawyer told them about it in his e-mail in February 2004.

As set forth in the Motion to Dismiss, the machine was sold to Hässleholms Mekaniska AB in 1982.  (Hässleholm is a city in southern Sweden, after which the company Hässleholms Mekaniska AB presumably took its name.)  It is not at all unusual for a buyer to put its name on a machine.  The Plaintiff may well have misinterpreted the Hässleholms label on the machine.  He may well have failed to obtain more information about Hässleholms Mekaniska AB, although such information was easily accessible in the Swedish corporate registry.  These were not the Defendants' responsibilities.  The Plaintiff apparently did not discover his mistake until approximately three years and nine months after the accident.  A lack of knowledge of the true identity of a party does not qualify as a "mistake" as contemplated under Federal Rule 15(c).  See Barnes v. Prince George's County, Md., 214 F.R.D. 379, 381 (D. Md. 2003)(Rule 15(c) does not permit relation back where there is a lack of knowledge of the proper party.   Moreover, applicable Maryland law does not recognize the use of a "John Doe" pleading to proceed at first against a fictitious unknown party and then later substitute the party's true name.

---

[2] See the Plaintiff's Memorandum in Opposition to defendants' Motion to Dismiss, at p. 11.

Nam v. Montgomery County, 127 Md. App. 172. 185 (1999).  That is what the Plaintiff impermissibly attempted to do here.

The Defendants do not contend that the Amended Complaint altered the cause of action in regard to relation-back analysis.  The Defendants contend that the Amended Complaint was filed late and nobody told them about it until more than four years after the accident.  The Plaintiff asserts that the service extensions granted by the Court (originally as to the mistaken defendant, Hassleholms Mekanisk AB) renders the Amended Complaint timely as to these Defendants.  This assertion fails for two reasons.  First, it ignores the prejudice to these Defendants inherent in the passage of four years of time between the accident and notice to the Defendants.  Second, it asks the Court to reward the Plaintiff for his own tardiness.

As to the prejudice arising from Plaintiff's untimely Amended Complaint, the Plaintiff makes much of the fact that the machine was manufactured in 1982 and that the Defendants may have access to information regarding its manufacture and sale long before the accident.  That misses the point.  The prejudice consists of the time that has passed since the accident in 1999.  These Defendants did not learn of the accident or of the Plaintiff's pending lawsuit against them until 2004.  In those intervening four years and more, critical information about the machine, its condition, its operation at the time of the accident, alterations to its safety equipment, etc. may well have been lost.  Witnesses knowledgeable about any of these facts or circumstances may have moved or died; the recollections of other witnesses may have faded.  The Plaintiff is asking the Court to accept on faith that there has been no prejudice, whereas Maryland's general

7

three-year statute of limitations is based on a premise of law that an unacceptable prejudice arises after three years.

Once again, the cases cited by Plaintiff in his Opposition do not help him on this issue.  Both DeRienzo v. Harvard Industries, 357 F.3d 348 (3d Cir. 2004) and Farrell v. Votator Division of Chemetron Corp., 299 A.2d 394 (N.J. 1973) were decided under New Jersey law.  Specifically, the cases were decided by applying New Jersey's "fictitious party rule" where, by statute, a plaintiff is permitted to toll New Jersey's two-year limitations period by timely filing an action against a John Doe defendant and later substituting the correct party.  The New Jersey statutory scheme is not applicable to the present case in Maryland, where John Doe pleadings are not authorized and the general three-year limitations period is considerably longer than New Jersey's two years.  In Anderson v. Deere & Co., 852 F.2d 1244, 1245-1247 (10th Cir. 1988), the defendant (Deere & Company) added later by amendment after limitations expired had already been put on notice of the timely suit against its subsidiaries (John Deere Company and John Deere Industrial Equipment Company).  Suit was filed against the subsidiaries on August 8, 1983.  Limitations ran November 12, 1983.  When Deere & Company was added later as a defendant in the amended complaint, it was already aware of the suit being defended by its subsidiaries, and relation back was permitted.  That is the critical distinction from the present case.  Here, Bergman & Beving AB and Luna AB did not know about Plaintiff's original suit against the unrelated defendant, Hasselholms Mekanisk AB.  They were left in the dark about this occurrence for more than four years.

On page 13 of his Opposition, the Plaintiff honestly admits, in italics, that he did not begin his inquiry into this matter "until the last couple weeks before expiration of the statute of limitations" in December 2002. The Plaintiff offers a fallacious argument that his lack of diligence in identifying his chosen defendants may be excused because he initially filed a workers compensation claim. Maryland's Workers' Compensation Act, at section 9-902 of the Labor & Employment Article of the Annotated Code of Maryland, extends the otherwise applicable statute of limitations by two months from the first award of compensation. Section 9-902(a) first grants a self-insured employer, insurer or fund the right to sue for damages against a third party who may be liable for the injury of the covered employee. Section (c) states that, if the employer, insurer or fund does not bring an action against the third party within two months after the Commission makes an award, the employee may bring his own action for damages. Section (d) reads in full:

> Limitations Period – The period of limitations for the right of action of a covered employee or the dependents of the covered employee against the third party does not begin to run until two months after the first award of compensation made to the covered employee or the dependents under this title.

In other words, the employer, insurer or fund enjoys the exclusive right to sue only for two months after the first award of compensation. After two months, the right of action belongs to the injured worker, i.e., the Plaintiff.

Attached to this Reply Memorandum are two documents from the Plaintiff's Workers' Compensation Commission file B484747 pertaining to his accident of December 20, 1999. The first document indicates that the Plaintiff's initial compensation payment was mailed to him on December 23, 1999. The second document, dated

9

February 23, 2000, is an Order of the Workers' Compensation Commission requiring the employer and insurer to pay the Plaintiff temporary total disability compensation of $317 per week, effective as of December 24, 1999.  Giving the Plaintiff every benefit of the doubt, the Commission made its "first award of compensation" on February 23, 2000.  Two months then passed, during which time the insurer or employer had the prerogative to bring suit on behalf of the claimant.  After those two months had passed, i.e., on April 23, 2000, the statute of limitations began to run in regard to the Plaintiff's own right of action.  Even allowing for this additional time under the Workers' Compensation Act, the statute of limitations expired in April 2003, months before the filing of the Amended Complaint naming these Defendants in October 2003.

Contrary to the assertion in his memorandum, the Plaintiff had a full three years and two months, not just a few weeks, to investigate and acquire all of the pertinent information in support of his lawsuit.   Sweden is an advanced country with the most modern communications and sophisticated corporate and legal resources; English is widely spoken there.  The Plaintiff did not pursue the pertinent information.  Those thirty-eight months provided him with ample time to recover from his injury and return to work (both of which achievements the Defendants admire) and then to identify correctly the defendants he wished to sue.   As this Court observed in Barnes v. Prince George's County, 214 F.R.D. at 382, "[T]he decision of when to file a complaint and how much room to leave for error belongs to the plaintiff."

For the reasons stated here and those stated more fully in the Defendants' prior memoranda in support of the pending Motions to Dismiss, the action should be dismissed.

Respectfully submitted,

_____/s/_____
Douglas W. Biser
Federal ID No. 01212

_____/s/_____
Matthew P. Lalumia
Federal ID No. 10863
Mudd, Harrison & Burch
300 Jefferson Building
105 West Chesapeake Avenue
Towson, Maryland 21204
410-828-1335
Fax number:  410-828-1042

Attorney for Defendants

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of August, 2004, I served a copy of the foregoing Reply Memorandum, which was electronically filed in this case on August 19, 2004, by first class mail, postage prepaid, to John M. Kotzker, Esquire, 2724 West Atlantic Boulevard, Pompano Beach, Florida 33069, attorney for Plaintiff.

_____/s/_____
Douglas W. Biser